## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **ROBERT J. O'NEILL, and ROBERT J. O'NEILL LLC,** | |
| **Plaintiffs,** | **Case No. _____** |
| **v.** | |
| **FRISCO SILVER STAR HOTEL CORPORATION d/b/a OMNI FRISCO SILVER HOTEL, and OMNI HOTELS MANAGEMENT CORPORATION, and JOHNNY LEE LOOMIS,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiffs Robert J. O'Neill ("O'Neill") and Robert J. O'Neill LLC ("RJO") (collectively, "Plaintiffs"), hereby file their Complaint against Defendants Frisco Silver Star Hotel Corporation d/b/a Omni Frisco Silver Hotel ("Silver Star"), Omni Hotels Management Corporation ("Omni Management Corp.") (collectively, "Hotel Defendants"), and Johnny Lee Loomis ("Loomis") (collectively, "Defendants") and in support show:

### INTRODUCTION

1.      O'Neill is a former Navy SEAL and member of SEAL Team Six. O'Neill is most famous for his service in Operation Neptune's Spear. He is credited with firing the shots that killed Osama bin Laden on May 2, 2011. O'Neill also served with distinction in the Navy's heroic effort to save Captain Richard Phillips and his crew from the Somalian hijackers of the *Maersk Alabama*, as well as the effort to save lone survivor Marcus Luttrell

1

from Taliban fighters during Operation Red Wings.

2.      Hotel Defendants are the owners and operators of the "Omni Frisco Hotel at The Star," located at the Dallas Cowboys' "World Headquarters" in Frisco, Texas (the "Hotel"). The Hotel is a joint business venture between Jerry Jones, the owner of the Dallas Cowboys, and the Rowling family, who operates the Omni Management Corp.'s parent corporation, TRT Holdings, Inc.

3.      This is a negligence action brought by O'Neill against Hotel Defendants arising from their hiring, screening, retention, and supervision of their employee and "security guard," Loomis. This action also asserts claims for defamation, false imprisonment, and assault against Loomis. This action seeks recovery of damages for reputational injury that Plaintiffs suffered as a direct and proximate result of Hotel Defendants' negligence and Loomis' false statements and intentional acts. This action also seeks damages for foreseeable mental anguish resulting from defamation, false imprisonment, and assault, duties arising out of a special relationship, and particularly shocking and disturbing events as alleged. Finally, in addition to the foregoing noneconomic damages, this action seeks economic damages including, but not limited to, lost income and revenue, and diminished future earning capacity.

4.      O'Neill's claims against Defendants arise from events that occurred at the Hotel on or about August 22, 2023 (the "August 2023 Incident"), Loomis' publication of false claims about the August 2023 Incident, and from the foreseeable events that followed.

5.      Hotel Defendants knowingly, recklessly, and negligently hired and retained Loomis as a security guard, despite Loomis' publicly available history as a pedophile and child sex purveyor. Hotel Defendants also knowingly, recklessly, and negligently hired and retained Loomis as a security guard despite his known history of violence and of making false

2

accusations of violence and misconduct against Hotel guests.

6.      In 2012, Loomis was employed as a deputy sheriff in the Caddo Parish Sheriff's Department in Shreveport, Louisiana. On or about November 13, 2012, a workplace investigation revealed that Loomis had repeatedly engaged in disturbing and sexually explicit online messages using a computer belonging to the Caddo Parish Sheriff's Department. Shortly thereafter, Detective Jared Marshall ("Detective Marshall") of the Caddo Parish Sheriff's Department investigated Loomis.

7.      Detective Marshall discovered that Loomis routinely sent and received sexually explicit messages involving children on his work computer. Loomis sent the messages using fake internet accounts he created. Some of the fake accounts Loomis titled "twistedsubmom," "granny1937luvsmomsgirlsboys," "cajun_dad2008," and "penneypalmer."

8.      Loomis' messages contained visceral descriptions of the sexual abuse of children. Some of his conversations fantasized about the rape of children as young as newborns. Loomis, under the "twistedsubmom" account, engaged in chat conversations posing as a female and talked about sexually abusing four children when they were newborns. In some messages where Loomis was posing as a female, Loomis discussed choking a newborn inside of his vagina to the point where the baby stopped breathing and needed to be revived by CPR.

9.      Detective Marshall executed a search warrant on Loomis' home and seized Loomis' personal computers. Upon a search of those computers, Detective Marshall discovered several videos containing child pornography that were flagged as "notable" by the National Center for Missing & Exploited Children ("NCEMC"). According to Detective Marshall's investigation, one of the videos showed what appeared to be a white pubescent

male giving oral sex to an adult white female on a bed. Another video, which Loomis had attempted to delete from his computer, was titled, "8yo gets molested by clown (pthc)."[1]

10.    On another one of Loomis' personal computers, Detective Marshall discovered fourteen images of children, ranging from 6 to 12 years of age. The children in the images were bound using various items such as tape, rope, and handcuffs. Some of the pictures appeared to be staged or in a studio set up. The other images appeared to show children in actual distress. Some pictures were under review in law enforcement investigations involving missing and exploited children.

11.    A police report documenting and confirming these allegations about Loomis is attached to this Complaint as ***Exhibit 1*** and is hereby incorporated by reference.

12.    Loomis resigned from his position on or about November 13, 2012, the day after Detective Marshall opened his investigation. Shockingly, Loomis was never criminally charged. One of the prevailing explanations is that the then-Sheriff did not want the matter discussed publicly because he was up for re-election that year. One witness stated that the then-Sheriff authored a letter to the District Attorney instructing him to refrain from prosecuting Loomis.

13.    Despite the then-Sheriff's intentions to keep the matter private, the matter did not stay private. On or about October 26, 2015, an individual named John Hampson published a story titled, "Corruption in Caddo Parish: The Truth Revealed."[2] In its first paragraphs, the

---

[1]    "pthc" is a keyword search on the internet for child sexual assault material, formerly referred to as child pornography.

[2]    This article remains available online: https://medium.com/@imrealHampson/corruption-in-caddo-parish-the-truth-revealed-363c5dff26cf (last visited May 13, 2024).

article described the events leading to Loomis' exit from the Caddo Parish Sheriff's Department, including terming Loomis a "pedophile." The article included a photograph of Loomis in the opening paragraphs. A basic Google search yields the Hampson article as one of the top hits resulting from a search of the words, "Johnny Loomis." This article was available to the entire world beginning on October 26, 2015.

14.     After Loomis' resignation from the police, and after the publicity about his pedophilic practices became public, Hotel Defendants in 2017 hired Loomis to work as a "loss prevention supervisor" for their new hotel at the Dallas Cowboys' "World Headquarters." Hotel Defendants also sometimes call Loomis a "security guard."

15.     By giving Loomis this supervisory role, Hotel Defendants afforded Loomis unfettered access to security cameras, Hotel rooms, and Hotel guests throughout the Hotel and the Dallas Cowboys' facility and "World Headquarters."

16.     Upon information and belief, Loomis is still employed by Hotel Defendants and is working at the Hotel as of the date of this filing.

17.     Before the events of August 22, 2023, Loomis had been involved in several other physical altercations with guests at the Hotel.

18.     One such guest was physically assaulted by Loomis and another Hotel employee while the guest was using a men's restroom stall. This guest is a respected businessman from Frisco, Texas. After starting the violent altercation, Loomis published false statements and instigated that guest's arrest, claiming the guest had started the altercation. In fact, the guest believed Loomis entered the bathroom stall to sexually assault him. This prior incident involving the guest is outlined in greater detail later in this Complaint.

19.     On at least one occasion before August 22, 2023, law enforcement personnel specifically warned Hotel Defendants about Loomis and his background. Yet, Hotel Defendants retained Loomis in his supervisory role, giving him continued, unsupervised access to Hotel premises and guests of all ages. Hotel Defendants also took no remedial or disciplinary action against Loomis.

20.     This lawsuit seeks substantial compensatory and punitive damages against Hotel Defendants for negligent hiring, screening, retention, and supervision arising from Hotel Defendants' employment of Loomis, for Loomis' false statements, and for events that occurred at the Hotel on or about August 22, 2023.

## PARTIES, JURISDICTION & VENUE

21.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties' citizenship is completely diverse. Plaintiffs are citizens of New York. Hotel Defendants are citizens of the States of Texas and Delaware. Loomis is a citizen of Texas.

22.     Plaintiff O'Neill is a natural person residing and domiciled in Westchester County, New York. O'Neill is a citizen of New York.

23.     Plaintiff RJO is a limited liability company organized under Delaware law and is headquartered in New York. O'Neill is RJO's sole member. Because O'Neill is a citizen of New York, RJO is also a citizen of New York for purposes of this diversity action.

24.     Defendant Frisco Silver Star Hotel Corporation d/b/a Omni Frisco Silver Hotel ("Silver Star") is a for-profit corporation organized under Delaware law with its principal place of business in the Dallas, Texas. Under 28 U.S.C. § 1332(c)(1), Silver Star is a citizen of the States of Texas and Delaware and may be served with process through its registered

agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

25.    Defendant Omni Hotels Management Corporation ("Omni Management Corp.") is a for-profit corporation organized under Delaware law with its principal place of business in Dallas, Texas. Under 28 U.S.C. § 1332(c)(1), Omni Management Corp. is a citizen of the States of Texas and Delaware and may be served with process through its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

26.    Defendant Loomis is a natural person residing and domiciled in the State of Texas. Loomis is a citizen of the State of Texas and may be served with process at 880 S. Coit Rd., Apt. 2306, Prosper, Texas 75078-3016, or wherever he may be found.

27.    The amount in controversy greatly exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees. The noneconomic and economic damages Plaintiffs have suffered as a result of Defendants' actions dwarf the jurisdictional threshold.

28.    Personal jurisdiction exists over Defendants because Hotel Defendants are corporations that regularly transact business in the State of Texas to give rise to general personal jurisdiction over them, and specific personal jurisdiction over them as this suit arises out of their contacts with the State of Texas in that this underlying incident occurred in Texas. Personal jurisdiction exists over Loomis because Loomis resides in and is a citizen of Texas.

29.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Hotel Defendants are headquartered in this District.

## FACTUAL BACKGROUND

**A.    THE HOTEL**

30.    The Hotel is located at 11 Cowboys Way, Frisco, Texas 75034. It opened for business in 2017. The Hotel, and the land on which it sits, is owned by Silver Star. Upon information and belief, one of Silver Star's shareholders is Blue Star Frisco, L.P. ("Blue Star"), which is owned by Jerry Jones, the owner of the Dallas Cowboys. Jerry Jones has been referred to as an "Inn Keeper" because of his co-ownership of the Hotel.[3]

31.    The Hotel's website states it is the official hotel of the Dallas Cowboys and claims it "serves as the cornerstone of The Star, a 91-acre entertainment district anchored by the Dallas Cowboys World Headquarters and their 12,000-seat practice facility, Ford Center." The Dallas Cowboys' logo, a blue star, is affixed to the side of the Hotel.

32.    When the Hotel opened, a public ribbon cutting ceremony took place during which Jones called the Hotel, "a triumph." Jeff Smith, then hotel manager at the time, told the crowd that Jones' son, Stephen Jones, brokered the deal to create the Hotel with Bob and Blake Rowling of Omni Management Corp.

---

[3]    See, e.g., DallasNews.com, Jerry Jones Becomes Inn Keeper as Omni Frisco Opens at Cowboys New Headquarters, (July 24, 2017), https://www.dallasnews.com/business/local-companies/2017/07/24/jerry-jones-becomes-innkeeper-as-omni-frisco-opens-at-cowboys-new-headquarters/; PaperCityMag.com, Jerry Jones Shows Off His Hall of Fame Hotel: The Dallas Cowboys' World Takeover Continues, (Aug. 30, 2017); https://www.papercitymag.com/culture/omni-frisco-jerry-jones-hotel-star-frisco-hall-fame-lodging/ ("Cowboys owner Jerry Jones and Robert Rowling, owner and chairman of TRT Holdings, spoke at the event to commemorate the union of the Cowboys and Omni brands."); SportsBusinessJournal.com, Jerry Jones-Backed Omni Hotel Opens at Cowboys HQ In Frisco, (July 25, 2017), https://www.sportsbusinessjournal.com/Daily/Morning-Buzz/2017/07/25/Jerry-Jones.aspx ("The hotel is 'jointly owned' with Omni Hotels Owner Bob Rowling and 'includes a Charlotte Jones boutique,' named for Jones' daughter").

33.     As part of the Hotel's development, Silver Star recorded a Declaration of Condominium, essentially dividing the property into two parts: the "Hotel Unit" and the "Conference Center Unit." The Declaration defines the "Hotel Unit Owner" as Silver Star and states its "address for notice is c/o Omni Hotels Management Corporation, 4001 Maple Avenue, Suite 600, Dallas, Texas 75219 (attn: Michael G. Smith)."

34.     Upon information and belief, Silver Star contracts with Omni Management Corp. to manage the Hotel. Hotel Defendants are both responsible for hiring and management decisions made at the Hotel including Loomis' employment and retention.

## B.     LOOMIS

35.     Loomis has been employed by Hotel Defendants since the Hotel opened.

36.     In 2012, Loomis' former employer, the Caddo Parish Sheriff's Department, determined that Loomis was in possession of child pornography on his work and personal computers; that Loomis misused and misappropriated his employer's property for illegal and misleading purposes; that Loomis lied about his identity using his work computer; and that Loomis fantasized about the sexual abuse and rape of children as young as newborns.

37.     At all relevant times, these facts about Loomis were publicly available. Hotel Defendants would have located these facts had they conducted a simple Google search or reasonable background check on their employee, Loomis. Before the August 2023 Incident, Loomis also had a history of violence, engaging in physical altercations with male guests of the Hotel, and then lying about who had instigated the fight.

**C.     O'NEILL**

38.     O'Neill was born and raised in Butte, Montana. He enlisted in the United States Navy in 1996.

39.     Between 1996 and 2001, O'Neill was a member of SEAL Team Two. Between 2001 and 2004, O'Neill was a member of SEAL Team Four. Between 2004 and 2012, O'Neill was a member of the legendary SEAL Team Six.

40.      O'Neill's direct and valiant contributions to the national security of the United States of America are immense. He has taken part in more than 400 military combat missions. He served in Operation Neptune's Spear, which resulted in the death of Osama bin Laden; the *Maersk Alabama* hijacking mission, which resulted in the rescue of Captain Richard Phillips and his crew; and Operation Red Wings, which resulted in the extraction and rescue of Navy SEAL Marcus Luttrell in Afghanistan. All three operations have been the subjects of major motion pictures.

41.     O'Neill has been decorated 53 times with honors including two Silver Stars for gallantry in action against the enemy, four Bronze Stars with Valor to denote heroism against the enemy, a Joint Service Commendation Medal with Valor, a Navy and Marine Corps Commendation Medal with Valor, three Presidential Unit Commendations, and three Combat Action ribbons.

42.     After his honorable discharge from the Navy, O'Neill continued promoting the defense of our nation, working as a motivational speaker, public commentator, and author. He has tirelessly raised awareness about veterans' issues and supported veterans through his extensive philanthropy. His website speaks of "Standing on the Shoulders of Giants" and is

dedicated to raising funds for veterans of special forces and their families. One of the books O'Neill has authored is titled, "THE OPERATOR: Firing the Shots that Killed Osama bin Laden and My Years as a SEAL Team Warrior."

43.     Prior to the August 2023 Incident, O'Neill has been interviewed on CNN, CBS, Fox News, Newsmax, and other sites, and was invited to be a guest on countless podcasts. O'Neill also participated in frequent paid speaking engagements and public appearances. However, after the August 2023 Incident and the Defendants' actions, O'Neill's speaking engagements dissipated, book sales slowed, revenue was lost, and his business, RJO, has been destroyed.

### D.     THE AUGUST 2023 INCIDENT

44.     In August 2023, O'Neill was invited to be a guest on a podcast in Frisco, Texas. O'Neill reserved a room for himself at the Hotel. O'Neill planned to stay in the room after the podcast before leaving Frisco the following day.

45.     O'Neill checked in to his room on August 22, 2023, then left the Hotel for the podcast studio. After recording the podcast, O'Neill returned to the Hotel. By this time, it was late but prior to midnight on August 22, 2023.

46.     Before retiring to his room, O'Neill visited the Hotel bar, located in the lobby of the Hotel. O'Neill ordered a single drink and at some point, exhausted from a long day of traveling and work, drifted to sleep alone at the bar.

47.     This is when Loomis approached O'Neill.

48.     After a brief exchange, Loomis walked with O'Neill to his room located on the fifth floor of the Hotel. When they reached the hallway outside of O'Neill's hotel room.

O'Neill struggled to find his keycard to open his room door.

49.     It was in this moment that Loomis decided to lie to his co-employees and, later, to the police. He chose to manufacture an utterly false narrative of the events that occurred in the hallway outside of O'Neill's room. Loomis' mendacious account falsely casts aspersions on O'Neill's character and behavior and instigated his arrest.

50.     Loomis falsely claims that after O'Neill first tried to open the door, O'Neill turned to Loomis, lifted his fists in the air, and struck Loomis in the chest with his right palm, "palm striking" Loomis. Loomis also falsely claims that O'Neill called Loomis a "fucking n*gger" when he struck him.[4]

51.     These accusations are false, baseless, and highly inflammatory.

52.     At some point while O'Neill was attempting to access his hotel room, Loomis called another employee of the Hotel, Cesar Almonte ("Almonte") asking that he call the police and claiming that O'Neill had assaulted him and called him the N-word.

53.     When the police arrived in the early morning hours of August 23, 2023, Loomis claimed to need medical attention "due to getting hit in the chest and having heart problems." Because of Loomis' request, medics arrived and examined Loomis, determining that Loomis was "clear" and did not need transportation to a hospital.

54.     Loomis also told the officers that the Hotel did not have security cameras on the fifth floor. Upon information and belief, this is yet another lie fabricated by Loomis to further his narrative because he knew the security footage would disprove his story.

---

[4]     Loomis is a white male.

55.     O'Neill was initially arrested and taken to the Frisco County jail for being intoxicated in a public place. However, it didn't end there. When the Frisco police finally shared Loomis' story, O'Neill immediately and unequivocally denied it. But it didn't matter.

56.      Law enforcement, acting solely on Loomis' false and disputed statements, sought and obtained a warrant for O'Neill's arrest for a meritless assault charge. Law enforcement then served O'Neill with the warrant and transported him to Collin County Detention Center where he was detained again.

57.     O'Neill was never prosecuted for any charge arising from the August 2023 Incident.

58.     Having served and fought side-by-side with men and women of every race, creed, and background, O'Neill abhors racial slurs. He does not use them, and he never will. Further, as a Navy SEAL, O'Neill received the most intense combat training mankind has ever devised. O'Neill would not "palm strike," another individual. O'Neill does not know what such a blow is, nor does or had he ever used force unnecessarily, disproportionately, or at inappropriate times. As a trained combat warrior, O'Neill is well-aware of his capacity in a fight, and assiduously practices utmost restraint.

**E.     LOOMIS' PRIOR PHYSICAL VIOLENCE AT THE HOTEL**

59.     The August 2023 Incident was not the first time Loomis accused a Hotel guest of assaulting him. Loomis reported himself to the police as a "victim" and claimed to have been assaulted by male guests of the Hotel on at least two other occasions.

60.     On October 22, 2017, Loomis claimed to be the victim in an incident involving Ryan Webb ("Webb") at the Neighborhood Services Restaurant in the Hotel. Loomis claimed

Webb struck his "right cheek with his left fist." While Loomis did not tell police that he was injured or needed medical attention, he did tell police that "due to past law enforcement training, [Loomis] took [Webb] to the ground and restrained him until police arrived." Loomis was acting as the Hotel's Loss Prevention Supervisor at the time of the incident.

61.    On June 6, 2021, Loomis claimed another Hotel guest committed an act of violence against him. On that date, Loomis was again on duty as the Loss Prevention Supervisor at the Hotel. That evening, Dallas businessman Kirk Porter ("Porter"), was using a restroom on the second floor of the Hotel near the conference rooms. Porter was in a bathroom stall when Loomis and a Hotel janitor, Kenneth Baker ("Baker"), burst into the restroom shouting, "Who's in here?"

62.    Porter told them his name and that he was a guest of the Hotel.

63.    Loomis and Baker then unlocked the bathroom stall door where Porter was sitting on the toilet and began punching Porter in the face while accusing him of not being a guest at the Hotel.

64.    Porter begged Loomis and Baker to stop.

65.    Porter believed that Loomis' and Baker's conduct indicated their intent to rape and otherwise take advantage of him sexually against his will. Porter fought back in self-defense to get out of the toilet stall. He was able to pin Loomis on the ground to the side of the toilet.

66.    Loomis then bit Porter in his chest and bit a chunk out of Porter's finger.

67.    Porter was eventually able to escape the bathroom and promptly left the Hotel, fearing for his life.

68.     Despite Loomis' outrageous conduct, Hotel Defendants continue to retain Loomis in a supervisory position, and took no remedial or punitive action against him.

## F.     LOOMIS LACKED REQUISITE SECURITY REGISTRATIONS

69.     Loomis does not hold a security guard registration with the Texas Department of Public Safety ("TDPS"). Texas law requires both on-staff and contracted security guards to hold a valid security guard registration with the TDPS.

70.     An individual acts as a security officer if the individual is: (1) employed by a security services contractor or the security department of a private business; and (2) employed to perform the duties of an alarm systems response runner who responds to the first signal of entry, a security guard, security watchman, security patrolman, armored car guard, or courier guard.[5]

71.     Loomis is a "Security Officer" because he worked for the Hotel's security department and was employed to perform the duties of an alarm systems response runner or security guard. However, Loomis lacked the registrations necessary to lawfully carry out his job. Hotel Defendants knew this but hired and retained Loomis anyway.

## G.     LAW ENFORCEMENT WARNED HOTEL DEFENDANTS ABOUT LOOMIS PRIOR TO THE AUGUST 2023 INCIDENT

72.     In March 2022, over a year before the August 2023 Incident, George Eric Hatfield ("Hatfield"), a Chief Deputy Constable of Caddo Parish, Louisiana, called a representative of Hotel Defendants to warn them about Loomis.

---

[5]     Tex. Occ. Code Ann. § 1702.222.

73.    Hatfield had been previously contacted by Porter about Loomis' attack in a bathroom of the Hotel and relayed this information to the Hotel Defendants.

74.    Hatfield also informed the Hotel Defendants about an investigative report "packet" containing information on Loomis by the Caddo Parish District Attorney's Office including information related to evidence that led to Loomis' departure from the Caddo Parish Sheriff's Department. Specifically, the packet contained evidence of Loomis' possession of child pornography and use of fake internet accounts using the Sheriff Department's property.

75.    Despite this information, the Hotel Defendants took no remedial action against Loomis and continued to grant him unfettered access to guests of the Hotel.[6]

76.    In addition, on or about October 26, 2015, author John Hampson published an article titled, "Corruption in Caddo Parish: The Truth Revealed." In this article, Loomis was named and his picture prominently displayed. The Hampson article stated that child porn and "incriminating chat messages" were found on Loomis' work-computer and that a search warrant was issued for his home computer. The Hampson article stated that "[c]oincidentally, the alleged pedophile, Johnny Loomis, resigned from his position the next day, and the 'investigation' to this day remains open, as it has been, since the incident occurred in 2012. This individual is a threat to our community's children, and he is now walking among us, free from consequence." The Hampson article also cited the investigative report concerning Loomis.[7]

77.    At the time Hotel Defendants opened the Hotel in 2017, the Hampson article and the facts about Loomis were available via a basic Google search. The Hampson article would have

---

[6]    Hatfield's declaration in support is attached as **Exhibit 2.**

[7]    This article is attached to this Complaint as **Exhibit 3**.

been discovered had the Hotel Defendants conducted a reasonable background check on Loomis.

## H.    O'NEILL SUFFERS FORESEEABLE DAMAGES

78.    As a proximate result of the Hotel Defendants' negligence and Loomis' actions, Plaintiffs suffered compensable injury, including, but not limited to, injury to Plaintiffs' reputation, physical pain and mental anguish, loss of companionship and society, lost business opportunity, loss of speaking engagements, personal physical injury and sickness, and emotional distress, among other things to be proven at trial.

### i.    Noneconomic Damages: Reputational Injury

79.    As a proximate and foreseeable result of Hotel Defendants' negligence and Loomis' false report about O'Neill, Plaintiffs suffered reputational injury.

80.    Loomis published a false report about O'Neill, including false statements that O'Neill physically attacked Loomis and called him the N-word. As a result of Hotel Defendants' negligence and Loomis' resulting false report, O'Neill was taken to jail. Loomis' foreseeable and explosive allegations caused O'Neill's mugshot and Loomis' false report to be widely published in the media. Because of Defendants' acts and omissions, Plaintiffs suffered irreparable and perpetual damage.

81.    The false accusation that O'Neill called Loomis (a white man) the N-word is particularly vile and abhorrent. The false accusation that O'Neill physically assaulted Loomis is an accusation of criminal conduct. Such accusations have and will diminish O'Neill's standing in the community. Members of the community have shunned Plaintiffs since the August 2023 Incident, citing Loomis' false report and the "N-word" accusation in particular. Moreover, anytime a person researches 9/11 or Osama bin Laden, O'Neill's name will show

up along with the false assault and "N-word" accusations.

82.    On August 28, 2023, the New York Post, through its reporter Mary Ann Martinez, published an article with the headline, "Former Navy SEAL Robert O'Neill, who killed Bin Laden, called security guard N-word during arrest: sources."[8] This article was a direct and foreseeable consequence of Loomis' false accusations and Hotel Defendants' negligence in hiring, screening, retaining, and supervising Loomis.

83.    The New York Post followed up on its initial reporting with at least one additional article about the incident.[9] This article was a direct and foreseeable consequence of Hotel Defendants' negligence in hiring, screening, retaining, and supervising Loomis.

84.    Several other news outlets published articles with similar headlines.[10] These articles were a direct and foreseeable consequence of Hotel Defendants' negligence in hiring, screening, retaining, and supervising Loomis.

85.    Defendants knew or should have known of Loomis' tendency to create false narratives and lie to the police. Thus, it was foreseeable that Loomis would make a false report because he had engaged in similar behavior on several other occasions prior to the August 2023 Incident. In particular, he engaged in criminal activity associated with child

---

[8]    https://nypost.com/2023/08/28/former-navy-seal-robert-oneill-who-claims-he-killed-bin-laden-beat-up-security-guard-called-him-n-word-cops/.

[9]    See NewYorkPost.com, *Security guard who claimed ex-Navy SEAL Robert O'Neill called him N-word revealed to be a white man*, (Aug. 30, 2023), https://nypost.com/2023/08/30/white-security-guard-claims-ex-navy-seal-assaulted-him-called-him-n-word/.

[10]    *See* HindustanTimes.com, *Texas security guard who accused Osama 'killer' Robert O'Neill of using racial slur is a white man*, (Aug. 31, 2023), https://www.hindustantimes.com/world-news/texas-security-guard-who-accused-osama-killer-robert-o-neill-of-calling-him-the-n-word-is-a-white-man-101693447293927.html.

pornography. As well, Loomis engaged in deceptive conduct both to hide his true self in pedophile chatrooms and to the police and others on behalf of Hotel Defendants. The Hotel Defendants' continued retention of Loomis enabled and authorized Loomis to continue his deceitful and damaging path.

86.     Moreover, reporting on the behavior of patrons is conduct that security personnel routinely undertake. If security personnel are not properly trained, licensed, or qualified, it would be foreseeable that security personnel employed by Hotel Defendants could cause immense reputational harm by making fabricated reports and instigating false detainments and imprisonments. The Hotel Defendants knew that Loomis lacked the requisite security guard registration but hired and retained him anyway.

### ii.     Noneconomic Damages: Mental Anguish

87.     As a proximate and foreseeable result of Defendants' negligence and Loomis' resulting false report, O'Neill suffered and will continue to suffer mental anguish, emotional distress, and personal physical injury and sickness.

88.     O'Neill may recover mental anguish damages in this case because, here, the mental anguish damages were the foreseeable result of duties arising out of special relationships: the relationship between a security guard (Loomis) and a patron (O'Neill); and the relationship between a hotel (Defendants) and its guest (O'Neill). In addition, O'Neill may recover mental anguish damages in this case because this case involves particularly shocking and disturbing events where mental anguish is a highly foreseeable result.

89.     Because of the false statements Loomis made about him, O'Neill suffered intense mental anguish and physical sickness. Knowing that his entire legacy and service to this country has been clouded and undermined by Loomis' false report – enabled by the Defendants – caused O'Neill immense mental suffering including, but not limited to, lost sleep, intense anxiety, and depression.

90.     It was foreseeable that a guest could suffer mental anguish if the Defendants, as proprietors of the Hotel, did not take care to ensure the qualifications and safety of their staff and security personnel. If security personnel are not properly trained, licensed, or qualified, it would be foreseeable that security personnel employed by Defendants could cause immense mental suffering by making a fabricated report.

91.     O'Neill's wife was pregnant during the August 2023 Incident, after suffering multiple prior miscarriages. Because of the reputational injury and mental anguish negligently inflicted upon O'Neill by Defendants, O'Neill and his wife suffered mental anguish and emotional distress reasonably worrying that the publicity given to the August 2023 Incident would leave her vulnerable to another miscarriage.

### iii.     Economic Damages

92.     As a proximate and foreseeable result of the Defendants' negligence and Loomis' resulting false report about O'Neill, Plaintiffs' income has been substantially diminished. O'Neill's speaking engagements, once overflowing, are now very few, and command much lower compensation; his charitable endeavors, in which he takes great personal pride, have been substantially reduced due to his suffering these false allegations.

93.     O'Neill's company, RJO, of which he is the sole member, is the pass-through entity that facilitates and obtains revenue from O'Neill's speaking engagements. O'Neill is the sole member of RJO. O'Neill and RJO have suffered substantial losses in revenue, income, and opportunity as a proximate and foreseeable result of the Defendants' negligence.

94.     Prior to the August 2023 Incident, O'Neill and RJO had specific speaking engagements scheduled. But following the incident and the false claim that O'Neill had assaulted Loomis and called him the N-word, those specific speaking engagements were cancelled, and O'Neill and RJO lost income.

95.     O'Neill and RJO will suffer lost future profits, revenue, income, and earnings because of this incident and Loomis' foreseeable false report.

96.     The legacies of O'Neill and RJO have been utterly ravaged by the Defendants' negligence. Any search of O'Neill on the internet, including without limitation searches of Osama bin Laden and 9/11, will yield Loomis' false report, a proximate consequence of the Defendants' negligence.

97.     The damages that O'Neill and RJO have suffered exceed the jurisdictional minimums of this Court.

### CAUSES OF ACTION

### COUNT 1—Negligence
### (Alleged Against Hotel Defendants)

98.     The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

99.     Texas law applies under Texas choice of law rules, which results in application of Texas law to this matter.

100.     Loomis is an employee of the Hotel Defendants. At all times relevant, Loomis acted in the course and scope of his employment with the Hotel. While in the course and scope of his employment, Loomis defamed, instigated a false imprisonment, and assaulted O'Neill.

101.     Hotel Defendants were under a duty to exercise ordinary and reasonable care with respect to the hiring, retention, and supervision of its employees, including Loomis.

102.     Hotel Defendants breached their duty by failing to properly hire, retain, and supervise its security guard, Loomis. Hotel Defendants had a responsibility but failed to:

   a.     Properly supervise their employees;
   b.     Refrain from leaving incompetent employees without supervision;
   c.     thoroughly investigate Loomis' background;
   d.     monitor for potentially unfit or incompetent employees; and
   e.     ensure that its security personnel comply with Texas law, including obtaining and maintaining requisite registrations.

103.     Hotel Defendants breached their duty of care to O'Neill by failing to conduct any background check—even failing to conduct a basic Google search—into Loomis that would have revealed that Loomis is a sexual predator and has repeatedly invented allegations of violence and victimhood. Loomis had lied about his identity on sexually explicit chatroom messages on a computer belonging to the Caddo Parish Sheriff's Department; had been caught in possession of child pornography on a Sheriff-owned computer; had fantasized about the sexual abuse of children during work hours with employer property, including choking newborns; and lacked the necessary TDPS security registrations to be employed in the security department of the Hotel. Loomis had also, on at least two prior occasions, been

involved in violent encounters with Hotel guests, and in at least one such occasion, had invented a wholly false depiction of the event that cast Loomis as the innocent victim instead of the violent perpetrator. Loomis clearly demonstrated an appetite for violence.

104.    Hotel Defendants breached their duty of care to O'Neill by failing to terminate Loomis after Hatfield specifically informed Hotel Defendants about Loomis' background in the wake of his physical altercation with Porter at the Hotel.

105.    Hotel Defendants breached their duty of care to O'Neill by failing to terminate supervisor Loomis after he had claimed to be the victim in physical altercations with guests at the Hotel.

106.    Hotel Defendants at the very least should have made certain that Loomis could not be alone with any guest of the Hotel; that he did not have access to security cameras throughout the Hotel; and that he could not speak on behalf of the Hotel to police officers.

107.    Hotel Defendants' negligence in hiring and retaining Loomis, and giving him supervisory authority, was the cause-in-fact of O'Neill's injuries.

108.    Hotel Defendants' failure to conduct a reasonable background check, require Loomis to obtain the necessary TDPS security registrations, or terminate Loomis was a substantial factor in bringing about O'Neill's injury.

109.    It was foreseeable that Hotel Defendants' failure to conduct a reasonable background check, require Loomis to obtain the necessary TDPS security registrations, or terminate Loomis created an unreasonable risk of harm to O'Neill and other guests.

110.    At all relevant times, there was publicly available evidence that Loomis: (1) lied about his identity and created fake accounts in online, sexually deviant chat rooms; (2) lied about his identity and created fake accounts to discuss the rape and abuse of children on his employer's computer; (3) concealed his possession of child pornography on his work computer; and (4) concealed the possession of child pornography on his personal computers, even at times attempting to delete the material.

111.    Hotel Defendants possessed actual knowledge of the above from Hatfield over a year in advance of the August 2023 Incident.

112.    Hotel Defendants should have been aware of Loomis' false and/or embellished claims to law enforcement regarding guests of the Hotel because he had done so on at least one other occasion with respect to the Porter altercation.

113.    It was foreseeable that if Hotel Defendants failed to take remedial action against Loomis that he could, and indeed would, once again make false and/or embellished incident reports to law enforcement officers damaging the reputations of guests of the Hotel. Loomis has committed underlying torts, including, but not limited to, the torts of defamation and instigation of a false imprisonment.

114.    Hotel Defendants had actual notice of Loomis' violent and dishonest tendencies yet retained Loomis in a role of authority at the Hotel.

115.    The above-referenced acts and omissions, constitute negligent hiring, retention, and supervision, and as a direct and proximate result, O'Neill suffered substantial noneconomic and economic damages proximately and foreseeably resulting from Hotel Defendants' negligence.

## COUNT 2—Defamation
### (Alleged Against Loomis)

116.   The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

117.   In Texas, the elements of action for defamation are: (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) with the requisite degree of fault; and (4) damages, in some cases. If the statements are defamatory *per se*, then the plaintiff need not plead and prove the fourth element of damages.

118.   Loomis published false statements of fact to third parties: Almonte and law enforcement officers.

119.   The false statements of fact Loomis published are that O'Neill "palm struck" Loomis and called him a "fucking n*gger." These statements of fact are utterly false and are sometimes referred to herein as the "False Statements."

120.   The False Statements are defamatory *per se* because they accuse O'Neill of a crime (e.g., assault) and adversely reflect on O'Neill's fitness to conduct his business and trade as a motivational public speaker. The False Statements are likewise capable of a defamatory meaning as a matter of law.

121.   The False Statements are of and concerning O'Neill because Loomis specifically referred to O'Neill in making the statements.

122.   No qualified or absolute privilege applies to the False Statements. Regardless, Loomis published his statements in bad faith and with common law malice. Loomis recognized O'Neill and wanted to cause him great harm and embarrassment out of ill will and spite, as he had done with prior guests of the Hotel. As he had when he worked for the Caddo

Parish Sheriff's Department, Loomis lied to law enforcement personnel.

123. Loomis published his statements negligently, with common law malice, and with actual malice. Loomis knew his statements were false or published them with reckless disregard of their truth.

124. During the August 2023 Incident, Loomis intentionally lied to law enforcement personnel, just as he had when he worked for the Caddo Parish Sheriff's Department.

125. Plaintiffs suffered noneconomic and economic damages, including, but not limited to, reputational injury and mental anguish, as a result of Loomis' False Statements.

### COUNT 3—False Imprisonment
### (Alleged Against Loomis)

126. The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

127. The elements of false imprisonment are: (1) willful detention, (2) without consent, and (3) without authority of law.

128. The Texas Supreme Court has recognized a cause of action against one who instigates a false imprisonment. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 507 (Tex. 2002) ("But in Texas, as both parties concede, liability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention.").

129. Instigation satisfies the first element set forth above if the defendant's conduct was intended to cause the detention and in fact caused the detention, even if the defendant did not participate directly in the detention.

130.    O'Neill was detained, without his consent, by law enforcement as a direct result of Loomis' false accusation that O'Neill physically assaulted Loomis. Loomis instructed that the police be contacted and directed or requested that O'Neill be arrested because of this false allegation of physical assault. At Loomis' request, or alternatively relying on Loomis' false allegation, law enforcement obtained a warrant falsely charging O'Neill with assault and had O'Neill imprisoned in Collin County Detention Center.

131.    The arrest was without legal authority or justification. Rather, it was based on Loomis' false accusation of physical assault.

### COUNT 4—Assault by Offensive Physical Contact
### (Alleged Against Loomis)

132.    The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

133.    Loomis intentionally made contact with O'Neill's person by reaching for and grabbing O'Neill's hotel key and/or wallet as O'Neill attempted to access his Hotel room.

134.    Loomis knew or should have known that any contact of this nature with O'Neill's person, as a former Navy SEAL, would be regarded as offensive or provocative.

135.    Loomis' offensive and provocative contact caused O'Neill damages.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs pray:

(a)     That the Court enter an award of and judgment for substantial compensatory damages against Defendants in amounts to be proven at trial;

(b)     That the Court enter an award of and judgment for substantial punitive damages against Defendants in an amount to be proven at trial;

(c)     That Plaintiffs recover their litigation expenses, costs, and reasonable attorneys' fees and expenses from Defendants;

(d)     That Plaintiffs recover pre- and post-judgment interest from Defendants;

(e)     That all costs of this action be taxed to Defendants;

(f)     That the Court grant any other relief that the Court deems just and proper.

Respectfully submitted,

**/s/ William S. Richmond**
WILLIAM S. RICHMOND
State Bar No. 24066800
brichmond@plattrichmond.com
KINSEY D. LAKEY
Texas Bar No. 24122134
klakey@plattrichmond.com

**PLATT RICHMOND PLLC**
1201 N. Riverfront Blvd., Ste. 150
Dallas, Texas 75207
Phone: (214) 559-2700
Fax: (214) 559-4390

and

TODD V. MCMURTRY
(*pro hac vice* motion forthcoming)
J. WILL HUBER
(*pro hac vice* motion forthcoming)

**HEMMER WESSELS MCMURTRY, PLLC**
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
whuber@hemmerlaw.com

**COUNSEL FOR PLAINTIFFS,
ROBERT J. O'NEILL AND ROBERT J.
O'NEILL LLC**